UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | No. 3:18-CR-006 |
| ) | |
| TIM PARKS ) | |

## MEMORANDUM AND ORDER

Now before the Court is the defendant's *pro se* motion for compassionate release pursuant to 18 U.S.C. 3582(c)(1)(A)(i). [Doc. 563].[1] The United States has responded in opposition to the motion [docs. 565, 569], and the defendant has submitted a reply [Doc. 571].

The matter is now ripe for the Court's consideration. For the reasons stated below, the defendant's motion for compassionate release will be denied.

## I. BACKGROUND

In November 2019, the Honorable Thomas W. Phillips sentenced the defendant to a below-guidelines term of 78 months' imprisonment for conspiring to distribute methamphetamine. The defendant is presently housed at FCI Morgantown with a projected release date of May 13, 2025. *See* Bureau of Prisons, https://www.bop.gov/inmateloc/ (last visited Dec. 14, 2020). He now moves for compassionate release due to the COVID-19 pandemic, cardiac problems, COPD, borderline diabetes, history of smoking, and age (59).

---

[1] Although it is filed "*pro se*," the motion is typewritten, professionally presented, contains 41 footnotes, and refers to "counsel" having the defendant's proposed release plan and being "willing to provide [it] to this Court[.]" [Doc. 563, p. 16].

## II. COMPASSIONATE RELEASE

Section 3582(c)(1)(A)(i) of Title 18, United States Code, allows district courts to consider prisoner motions for sentence reduction upon a finding of "extraordinary and compelling reasons." That statute, as amended by the First Step Act of 2018, provides in relevant part:

> [T]he court, upon motion of the Director of the Bureau of Prisons ["BOP"], or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
>
> > (i) extraordinary and compelling reasons warrant such a reduction ... and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission....

18 U.S.C. § 3582(c)(1)(A)(i). Prior to the First Step Act, a motion for compassionate release could only be brought by the BOP Director, not a defendant. *See* 18 U.S.C. § 3582(c)(1)(A) (2017). The First Step Act amended § 3582(c)(1)(A) to allow a defendant to file a motion for compassionate release after first asking the BOP to file such a motion on his behalf. *See, e.g., United States v. Alam*, 960 F.3d 831, 832 (6th Cir. 2020).

The United States Sentencing Commission has promulgated a policy statement regarding compassionate release under § 3582(c), which is found at U.S.S.G. § 1B1.13 and the accompanying application notes. District courts in this circuit have previously turned to U.S.S.G. § 1B1.13 to provide guidance on the "extraordinary and compelling reasons" that may warrant a sentence reduction but, as of November 20, 2020, are no longer to do

2

so, at least as to compassionate release motions filed by defendants (rather than by the BOP). *See United States v. Jones*, ___ F.3d ___, 2020 WL 6817488, at *7 (6th Cir. Nov. 20, 2020) (Guideline 1B1.13 "is not an 'applicable' policy statement when an imprisoned person files a motion for compassionate release.").[2] "District courts should [still] consider all relevant § 3553(a) factors before rendering a compassionate release decision." *Id.* at 11.

### A. Exhaustion

The defendant has previously submitted a compassionate release request to the BOP, and more than 30 days have passed since that request was received by the warden. [Doc. 563]. The Court thus has authority under § 3582(c)(1)(A) to address the instant motion. *See Alam*, 960 F.3d at 832.

### B. Merits

As mentioned above, in support of his motion the defendant cites the COVID-19 pandemic, cardiac problems, COPD, borderline diabetes, history of smoking, and age (59). Consistent with § 3582 and the Sixth Circuit's directive, this Court has considered the defendant's arguments and the broader facts of this case in light of the pertinent § 3553(a) factors. Pursuant to 18 U.S.C. § 3553(a),

> The court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection. The court, in determining the particular sentence to be imposed, shall consider –
>
> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
>
> (2) the need for the sentence imposed—

---

[2] The parties in this case have not addressed any guideline policy statement other than § 1B1.13.

3

(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

(B) to afford adequate deterrence to criminal conduct;

(C) to protect the public from further crimes of the defendant; and

(D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

(3) the kinds of sentences available;

(4) the kinds of sentence and the sentencing range established for—

(A) the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines—

(i) issued by the Sentencing Commission pursuant to section 994(a)(1) of title 28, United States Code, subject to any amendments made to such guidelines by act of Congress (regardless of whether such amendments have yet to be incorporated by the Sentencing Commission into amendments issued under section 994(p) of title 28); and

(ii) that, except as provided in section 3742(g), are in effect on the date the defendant is sentenced; or

(B) in the case of a violation of probation or supervised release, the applicable guidelines or policy statements issued by the Sentencing Commission pursuant to section 994(a)(3) of title 28, United States Code, taking into account any amendments made to such guidelines or policy statements by act of Congress (regardless of whether such amendments have yet to be incorporated by the Sentencing Commission into amendments issued under section 994(p) of title 28);

(5) any pertinent policy statement—

(A) issued by the Sentencing Commission pursuant to section 994(a)(2) of title 28, United States Code, subject to any amendments made to such policy statement by act of Congress (regardless of whether such amendments have yet to be incorporated by the Sentencing Commission into amendments issued under section 994(p) of title 28); and

(B) that, except as provided in section 3742(g), is in effect on the date the defendant is sentenced.

4

(6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

(7) the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a).

At the defendant's prison, there are currently 121 inmates and nine staff positive for COVID-19, with five inmates and seven staff having recovered, and no deaths. *See* Bureau of Prisons, https://www.bop.gov/coronavirus/ (last visited Dec. 14, 2020). These numbers are indeed serious, but the Court also notes that outside the prison setting our nation is presently experiencing a "surge upon a surge" in terms of COVID diagnoses, hospitalizations, and deaths. Further, the COVID-19 pandemic cannot alone justify compassionate release. *See, e.g., United States v. Shah*, No. 16-20457, 2020 WL 1934930, at *2 (E.D. Mich. April 22, 2020) ("[S]peculation as to whether COVID-19 will spread through Defendant's detention facility . . . , whether Defendant will contract COVID-19, and whether he will develop serious complications, does not justify the extreme remedy of compassionate release."); *see also United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020) ("[T]he mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release[.]").

BOP medical records show that the defendant has hypertension, unspecified heart disease with a history of stents, emphysema, and prediabetes. [Doc. 569]. In March 2020, he was hospitalized overnight to rule out chest pain. [*Id.*]. The hospital adjusted the defendant's medication, and on discharge he was fully ambulatory and capable of self-care. [*Id.*]. A 40-year history of smoking was noted. [*Id.*].

At present, emphysema, serious heart conditions, and a history of smoking are considered to conditions which create an increased risk of severe illness from COVID-19, and the risk of COVID-related complications generally increases with age. *See* People with Certain Medical Conditions, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last visited Dec. 14, 2020). Additionally, persons with hypertension might be at increased risk. [*Id.*].

The BOP's SENTRY Report shows that the defendant is categorized as Care Level 2. "Care Level 2 inmates are stable outpatients who require clinician evaluations monthly to every 6 months. Their medical . . . conditions can be managed through routine, regularly scheduled appointments with clinicians for monitoring. Enhanced medical resources, such as consultation or evaluation by medical specialists, may be required from time to time." *See* http://www.bop.gov/resources/pdfs/care_level_classification_guide.pdf (last visited Dec. 14, 2020).

Turning to the nature and circumstances of the instant offense and the defendant's history and characteristics, in this case the defendant was paid to store methamphetamine on his property "intermittently," and he admittedly allowed at least a kilogram of methamphetamine to be stored at his residence on one occasion in 2017. [Presentence Investigation Report ("PSR'), doc. 460, ¶¶ 21-22, 30]. The defendant had a minimal criminal history. [*Id.*, ¶ 45]. Medical records cited in the PSR documented a history of hypertension, cardiac disease, and partial amputation of the left arm. [*Id.*, ¶¶ 54-55]. The defendant had been a marijuana user since his teens, but he successfully remained on bond pending sentencing in this case. [*Id.*, p. 2, 11].

6
Case 3:18-cr-00006-RLJ-DCP  Document 572  Filed 12/15/20  Page 6 of 8  PageID #: 4287

At sentencing the defendant objected to the PSR, arguing that he should receive a minimal or minor role adjustment pursuant to guideline § 3B1.2 because he purportedly only stored drugs on his property, for payment, "from time to time." [Doc. 431]. The United States opposed the objection, citing statements from five witness who each claimed that the defendant *distributed* methamphetamine in addition to storing it. [Doc. 482]. The defendant also sought a downward variance, primarily due to his health. [Doc. 431].

Judge Phillips considered the parties' arguments. He overruled the defendant's objection [doc. 490] but did grant a one-level downward variance because the defendant "was not a substantial player, does not have a significant criminal history, and is in poor physical health." [Doc. 492].

The SENTRY Report shows that the defendant has not incurred any disciplinary sanctions during his proportionately brief time in BOP custody. The BOP scores him as a minimum-security inmate with a low risk of recidivism.

The Court has considered the relevant § 3553(a) factors, the facts of this case, the defendant's history and characteristics, and the arguments raised in the instant motion. The Court notes the defendant's health problems, minimal criminal history, and apparent good conduct while on bond and while in BOP custody.

However, with the exception of COVID-19 and post-sentencing conduct, the issues presented in the instant motion were all before Judge Phillips at sentencing. Judge Phillips weighed those issues (barely a year ago) and found a below-guideline term of 78 months' imprisonment to be warranted in this case. The defendant has barely served 13 months of that sentence.

7

Case 3:18-cr-00006-RLJ-DCP   Document 572   Filed 12/15/20   Page 7 of 8   PageID #: 4288

The defendant's health conditions did not prevent his criminal conduct in this case, involving (at least) the intermittent storage of a significant amount of methamphetamine. Importantly, only a small fraction of Judge Phillips's sentence has been served. *See United States v. Kincaid*, 802 F. App'x 187, 188 (6th Cir. 2020) (Several § 3553(a) factors "permit the court to consider the amount of time served in determining whether a sentence modification is appropriate."). The substantial sentence reduction requested in this case would not reflect the seriousness of the instant offense, would not promote respect for the law or provide just punishment, and would not afford adequate deterrence or protect the public from future crimes of the defendant. The Court therefore does not find extraordinary and compelling reasons justifying compassionate release.

### III.  CONCLUSION

As provided herein, the defendant's motion for compassionate release [doc. 563] is **DENIED**.

**IT IS SO ORDERED.**

ENTER:

s/ Leon Jordan<br>United States District Judge